■ HERRICK, FEINSTEIN LLP, Appellant, v THOBURN M. STAMM, JR., Respondent. [746 NYS2d 712]

Pursuant to a written retainer agreement providing for billing at hourly rates and reimbursement of expenses, plaintiff law firm represented defendant in complex litigation of approximately seven years' duration. Defendant paid plaintiff more than $1,000,000 for services rendered, and expenses incurred, through the end of July 2000. By letter dated July 28, 2000, plaintiff advised defendant that the cost of seeing the case through trial, rather than settling, would be "approximately $100,000 (rough figure)" for the prospect of recovering approximately $560,000, while risking the loss of approximately $1,400,000. The case ultimately settled on September 19, 2000, after jury selection and two days of negotiations. Thereafter, plaintiff sent defendant four itemized invoices that charged $180,985.45 in the aggregate for legal work and expenses since the beginning of August. Defendant received the August invoice, dated September 29, 2000, for $53,395.26, at some point in October, and the September invoice, dated October 30, 2000, for $122,113, at some point in November. The October and November invoices, which in the aggregate set forth additional charges of $5,477.19, were sent to defendant on December 5, 2000, and December 14, 2000, respectively.

It is undisputed that defendant's first response to the foregoing invoices was given by telephone on December 21, 2000, to Susan Dwyer, Esq., the attorney in charge of his representation. In that conversation, defendant allegedly told Ms. Dwyer that he was "very troubled by the size of the bills then in hand," and that he needed additional time to review

them. Thereafter, defendant sent plaintiff a fax, dated December 28, 2000, stating that he needed additional time to review the invoices, and that he would "get back to you shortly after the new year."

Defendant more fully responded to plaintiff by fax dated January 10, 2001. In this letter, defendant stated that, after reviewing the invoices, he was "still troubled by the unexpectedly large amount involved here," which he deemed inconsistent with plaintiff's July 2000 forecast of the cost of going to trial as approximately $100,000. Since the case settled after jury selection, defendant stated that he might have expected a bill of "$50,000 to $60,000." Defendant stated that the fact that plaintiff billed considerably more than the amount it had projected for work through a full trial was causing him "much difficulty," in that, in his view, "[t]here were absolutely no surprises in the interim. Everything went as expected." Defendant closed the letter with the suggestion that the parties voluntarily submit the matter to arbitration. Plaintiff thereafter commenced this action for, inter alia, an account stated, and moved for summary judgment before providing any of the discovery sought by defendant. Supreme Court denied the motion, and we now affirm.

"[T]he very meaning of an account stated is that the parties have come together and agreed upon the balance of indebtedness * * * so that an action to recover the balance as upon an implied promise of payment may thenceforth be maintained" (*Interman Indus. Prods. v R.S.M. Electron Power*, 37 NY2d 151, 153-154, quoting *Newburger-Morris Co. v Talcott*, 219 NY 505, 512). While an account stated may often result from the retention of an invoice without objection, as also noted in *Newburger-Morris* (*supra*), a different result may follow depending upon "the circumstances that surround the submission of the statements" (*id.* at 511).

Under the circumstances of this case, it cannot be said that defendant's first objection to the four invoices at issue on December 21, 2000, approximately two months after receipt of the first of the invoices at some point during October, came so late that the delay constituted, as a matter of law, "an unequivocal assent to the balance[s] stated" (*Epstein Reiss & Goodman v Greenfield*, 102 AD2d 749, 750). In this connection, we find significant the disparity between plaintiff's projection at the end of July 2000 of the cost of seeing the case through a full trial (approximately $100,000) and the substantially greater amount plaintiff ultimately billed for work performed from the beginning of August through jury selection in mid-

September, when the case settled (approximately $180,000). Against the background of this disparity, a trier of fact could reasonably conclude that defendant's alleged statement in his December 21st telephone conversation with plaintiff that he was "very troubled by the size of the bills then in hand" was sufficiently specific and timely to negate any inference of assent to the invoices.

In closing, we emphasize that we have no occasion on this appeal to make findings or rulings on the propriety of the legal work itemized in the invoices at issue or the fees charged therefor. We merely hold that, on the evidence in the present record, plaintiff has not established its entitlement to judgment for an account stated as a matter of law. Concur—Nardelli, J.P., Tom, Sullivan and Friedman, JJ.

Rubin, J., dissents in a memorandum as follows: At issue on this summary judgment application, as on all such motions, are (1) whether defendant has stated a cognizable defense to the action against him and (2) whether defendant has raised any issue of fact necessary to be resolved in order to decide any legal issue presented. As I conclude that defendant has done neither, I perceive no reason why judgment should not be summarily entered against him.

In dispute in this case is the amount due plaintiff law firm for legal services rendered to defendant up to the date of settlement of the underlying action, September 19, 2000. It is undisputed that plaintiff issued detailed statements of account to defendant, the latest relevant statement being that dated October 30, 2000. While defendant signaled that he was "troubled" by the amount billed, it was not until he submitted his affidavit opposing the motion for summary judgment (dated March 26, 2001) that defendant stated any basis for his objection, and then only in passing. The gravamen of the defense was not articulated until this appeal. Using inflated figures, he suggests that the $198,414.47 billed by plaintiff must be deemed excessive because it is almost double the $100,000 projected by counsel in a letter of July 28, 2000.

This defense fails for two reasons. First, as plaintiff points out, objection was first raised over four months after the October billing statement was received and is therefore not timely. Second, quite apart from its belated assertion, the proffered objection does not make out a cognizable defense. In arguing that the quoted figure represents a cap on the amount of legal fees, defendant is attempting to substitute a flat-fee arrangement for the hourly fee structure contained in the written retainer agreement.

There is no support in the record for defendant's contention that he "was certainly entitled to rely on [plaintiff's] reasonable estimate of the additional legal expenses that I would incur" should the matter proceed to trial. The $100,000 amount seized upon by defendant is contained in "a cost/benefit-risk analysis" prepared by counsel in connection with a settlement offer by defendant's insurance carrier. Counsel's letter states that this is merely a "rough figure" and contains no intimation that any change in the parties' contractual relationship was intended. Defendant cites no principle of contract law that would require a court to regard the settlement analysis as a substitute for the written fee agreement between counsel and client. Finally, the public policy of encouraging the settlement of disputes will hardly be advanced by permitting a client to avoid payment of counsel's fees by taking advantage of material expressly prepared in connection with a settlement offer.

As the defense fails as a matter of law, the relative lateness of defendant's objection to the statement of account and the amount of the actual, as opposed to the projected, trial expenses is not material. To place the sum in controversy into perspective, the amount billed for legal fees rendered prior to the negotiated settlement is actually less than $160,000, not nearly $200,000, as defendant asserts. Moreover, defendant's total expenditure for legal services during the seven-year course of this litigation is in excess of $1,000,000. Significantly, even at this late stage of the proceedings, defendant has failed to identify any particular items in the account statements that are improper.

Defendant Thoburn M. Stamm entered into a retainer agreement with plaintiff law firm dated November 24, 1993, which obligates defendant to pay for hourly services rendered on his behalf and to reimburse plaintiff for its expenses. Plaintiff represented defendant in a lawsuit brought by his insurance carrier to limit its liability for injuries sustained by defendant's wife in a Michigan automobile accident. Defendant, who was driving at the time of the accident, asserted counterclaims seeking additional payments from the insurer. The litigation, which involved issues of Michigan no-fault law, continued over the next seven years and included 27 pretrial motions and four appeals to this Court. Prior to the settlement entered on the record on September 19, 2000, which was reached after jury selection and immediately prior to opening arguments, defendant had paid plaintiff firm more than $1,000,000 in legal fees and disbursements, without objection.

It is uncontroverted that defendant received statements of

account dated September 29, October 30, November 28 and December 14, 2000. It is further uncontroverted that, in a telephone conversation on December 21, 2000, defendant indicated that he was "very troubled by the size of the bills" and that he "needed time to review and understand them." It was not until his correspondence of January 10, 2001 that defendant expressed a reason why he was "troubled by the unexpectedly large amount involved here": in a letter of July 28, 2000, counsel had stated that he could "expect to spend $100,000 (rough estimate) seeing the case through trial." Defendant went on to note that trial had been avoided by the settlement and yet, "[t]he bill turned out to be $198,000 plus, which is why I'm having so much difficulty." Defendant concluded by offering "to arbitrate this matter before the fee dispute committee of New York County Lawyers [Association]."

When demands for payment were not met, plaintiff commenced this action on February 23, 2001. The answer contains conclusory allegations to the effect that plaintiff's fees were "inflated and improper" but avers specifically that defendant had relied on plaintiff's "expertise, experience and presumed good faith in making projections and estimates of legal fees and expenses * * * in particular, with respect to those tasks associated with the legal fee charges and expenses set forth in the subject unpaid invoices." Plaintiff's reply asserts that "Stamm concedes all elements of this claim. Invoices were held without any objection for many months. In fact, no objection to such invoices was made, other than a general complaint that the amounts were high[er] than expected, until suit was filed."

The subject motion for summary judgment was made returnable in May 2001. In a rambling affidavit in opposition, defendant again states that he "was certainly entitled to rely on [plaintiff's] reasonable estimate of the additional legal expenses that I would incur" should trial be required. The moving papers contain no affidavit from counsel setting forth the legal basis upon which opposition to the motion for summary judgment rests. Nor do the opposing papers identify any item that is "inflated" or "improper."

Only on appeal does defendant articulate the contract defense of reliance, making reference to the firm's settlement assessment of July 28, 2000. In addition, defendant now asserts, for the first time, that a verbal representation in the telephone conversation of December 21, 2000 to the effect that he was "troubled" by the amount billed constitutes a timely objection to "the subject invoices."

With respect to his asserted reliance on the figure contained

in the settlement analysis, defendant has not established that the concededly "rough estimate" of trial costs was intended to be anything but. Counsel's letter states, "You will spend approximately (rough figure) $100,000 to do this, and at the same time risk losing $1,413,080." The letter contains no suggestion that any modification of the firm's billing practices, based upon the hours actually worked and the expenses incurred, was intended. To the contrary, the letter informs defendant, at the outset, that it is "a cost/benefit-risk analysis," which sets out the possible financial consequences of proceeding to trial as opposed to accepting the insurer's settlement offer.

In order to establish a modification of the retainer agreement, defendant is required to demonstrate that by virtue of his reasonable reliance upon plaintiff's alleged representation, he substantially changed his position and, as a result, incurred a detriment (*cf., Stendig v Thom Rock Realty Co.*, 163 AD2d 46, 48-49). Defendant has demonstrated neither "significant and substantial reliance" upon a modification of the retainer agreement (*Rose v Spa Realty Assoc.*, 42 NY2d 338, 344), nor that any such reliance was reasonable (*Chadirjian v Kanian*, 123 AD2d 596, 597). Having failed to establish equitable estoppel to support modification, defendant is bound by the original written agreement.

As to the expression of a timely objection to the statements of account, it is evident that the invoices dated November 28 and December 14, 2000 represent posttrial fees and expenses incurred in the negotiation and drafting of the agreement settling the underlying action. Indeed, the record discloses that the last item of trial preparation is dated September 19 (invoice of October 30, 2000). The subsequent statements, which involve a total of only $5,477 according to defendant, are therefore not pertinent to the dispute concerning trial preparation costs.

The material invoices are the statements of account dated September 29 and October 30, 2000. As to these, defendant voiced only a vague dissatisfaction with respect to the total amount billed, both in his conversation in mid-December 2000 and in his follow-up correspondence of January 10, 2001. No express objection was articulated until May, in his answer to plaintiff's motion for summary judgment, and that was predicated on the unfounded premise that defendant was entitled to rely on the rough estimate of trial costs.

"An account stated is an agreement between the parties to an account based upon prior transactions between them with respect to the correctness of the separate items composing the account and the balance due, if any, in favor of one party or

the other" (*Chisholm-Ryder Co. v Sommer & Sommer*, 70 AD2d 429, 431 [Simons, J.]). Nothing in the cases cited by defendant contravenes the requirement to specify objection to particular items within a reasonable time to avoid summary judgment (*id.*). Even at this late juncture, defendant has stated no objection to any particular item billed to him by plaintiff. Bald conclusory assertions as to inflated or otherwise inappropriate fees, without supporting evidentiary proof, are insufficient to withstand a motion for summary judgment (*Capelin Assoc. v Globe Mfg. Corp.*, 34 NY2d 338, 342; *see also, Fink, Weinberger, Fredman, Berman & Lowell v Petrides*, 80 AD2d 781, *appeal dismissed* 53 NY2d 1028).

Accordingly, the order, insofar as appealed from, should be reversed and plaintiff's motion for summary judgment granted on its cause of action for an account stated.